

United States District Court
Southern District of Texas
**ENTERED**
April 27, 2016
David J. Bradley, Clerk
ENTERED
04/26/2016

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| MARIA SOUTHALL-SHAW, | § § § | Case No. 15-33085 |
| Debtor. | § § § § | Chapter 13 |
| | § | |
| MARIA SOUTHALL-SHAW AND ELVIS LEE SHAW, | § § § § | |
| Plaintiffs | § § | Adversary No. 15-03322 |
| v. | § § § | |
| HSBC MORTGAGE SERVICES, INC., HOUSEHOLD FINANCE CORPORATION III AND CALIBER HOME LOANS, INC., | § § § § § § | |
| Defendants. | § § | |

**REPORT AND RECOMMENDATION TO THE UNITED STATES
DISTRICT COURT RECOMMENDING THE WITHDRAWAL OF
THE REFERENCE OF THIS ADVERSARY PROCEEDING**
[Adv. Doc. Nos. 16, 19 & 22]

I. INTRODUCTION

In the above-referenced adversary proceeding (the "Adversary Proceeding"), the plaintiffs, Maria Southall-Shaw and Elvis Lee Shaw (the "Plaintiffs"), have asserted claims against HSBC Mortgage Services, Inc. ("HSBC"), Household Finance Corporation III ("Household Finance"), and Caliber Home Loans, Inc. ("Caliber") (collectively, the "Defendants"). The Plaintiffs assert the following causes of actions: (1) negligence; (2) negligent misrepresentation; (3) breach of contract; (4) interference with an existing contract; (5) damage to credit rating; (6) violation of the Texas Debt Collection Act; and (7) violation of the

1

Truth in Lending Act pursuant to 15 U.S.C. §§ 1639(t) and 1639g. [Adv. Doc. No. 1]. HSBC and Household Finance have moved to withdraw the reference of the Adversary Proceeding, but have not demanded a jury trial. [Adv. Doc. No. 16]. Caliber has not moved to withdraw the reference, nor has it requested a jury trial; however, Caliber has not yet filed its answer, so it is possible that it could request a jury trial. The Plaintiffs oppose withdrawal of the reference. [Adv. Doc. No. 19]. For the reasons set forth below, this Court recommends that the reference be immediately withdrawn.

## II. FACTUAL AND PROCEDURAL BACKGROUND OF THE MAIN CHAPTER 13 CASE AND THE ADVERSARY PROCEEDING AT BAR

1. On June 2, 2015, Maria Southall-Shaw (the "Debtor") filed a voluntary Chapter 13 petition initiating bankruptcy case number 15-33085. [Main Case No. 15-33085, Doc. No. 1].

2. On July 17, 2015, the Debtor filed her proposed Chapter 13 plan of reorganization. [Main Case No. 15-33085, Doc. No. 23]. The plan proposes to pay a total of $503,200.00 over 44 months. [Id.].

3. On October 15, 2015, Caliber—a creditor in the main bankruptcy case who holds a lien on the Debtor's homestead—filed its proof of claim setting forth a total secured amount of $474,122.34 and an arrearage claim of $269,786.21. [Claim No. 3 on Claims Register].

4. On December 11, 2015, the Debtor and her husband (previously defined as the Plaintiffs) filed their original complaint against the Defendants (the "Complaint") thereby initiating the Adversary Proceeding. [Adv. Doc. No. 1]. The Complaint asserts the seven claims referenced above.

5. On December 13, 2015, the Debtor filed an objection to Caliber's proof of claim. [Doc. No. 50].

6. On December 18, 2015, this Court issued its Comprehensive Scheduling, Pretrial, and Trial Order (the "Scheduling Order"). [Adv. Doc. No. 7].

7. On January 14, 2016, HSBC and Household Finance filed their original answers and affirmative defenses. [Adv. Doc. No. 10]. In their answers, they expressly do <u>not</u> consent to the undersigned bankruptcy judge entering a final judgment in the Adversary Proceeding. [*Id.*, p. 2 of 10].

8. On the same day, Caliber filed its Motion to Dismiss Adversary Proceeding with Prejudice ("Caliber's First Motion to Dismiss"). [Adv. Doc. No. 11].

9. On February 4, 2016, the Court held an initial status hearing. At this initial status hearing, counsel for HSBC and Household Finance informed the Court that he would soon be filing a motion to withdraw the reference.

10. On February 10, 2016, this Court entered an Order Denying Caliber's First Motion to Dismiss on the basis that Caliber failed to provide an order pursuant to Bankruptcy Local Rule 9013-1(h). [Doc. No. 13].

11. On February 12, 2016, Caliber filed another Motion to Dismiss Adversary Proceeding ("Caliber's Second Motion to Dismiss"). [Adv. Doc. No. 14].

12. On February 29, 2016, HSBC and Household Finance filed their Motion to Withdraw Reference (the "Motion to Withdraw Reference"). [Adv. Doc. No. 16].

13. On March 6, 2016, the Plaintiffs filed a response to Caliber's Second Motion to Dismiss. [Adv. Doc. No. 17]. This Court has not yet ruled on Caliber's Second Motion to

Dismiss; it has deliberately refrained from ruling pending a decision on the Motion to Withdraw Reference.

14. On March 21, 2016, the Plaintiffs filed a response to the Motion to Withdraw Reference. [Adv. Doc. No. 19].

15. On March 28, 2016, HSBC and Household Finance filed their Reply in support of the Motion to Withdraw Reference. [Adv. Doc. No. 22].

16. On March 31, 2016, this Court held a hearing on the Motion to Withdraw Reference. After hearing arguments, the Court took the matter under advisement. The Court now makes this report and recommendation to the District Court.

### III. CONCLUSIONS OF LAW

**A. Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order**

The Court has jurisdiction over the Adversary Proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Code], or arising in or related to cases under title 11." District courts may, in turn, refer these proceedings to the bankruptcy judges for that district. 28 U.S.C. § 157(a). In the Southern District of Texas, General Order 2012-6 (entitled General Order of Reference) automatically refers all eligible cases and proceedings to the bankruptcy courts.

Venue is proper pursuant to 28 U.S.C. § 1409(a).

The Supreme Court's decision in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), recognized certain limitations on a bankruptcy court's authority to enter a final order. Here, however, there is no *Stern* concern because the undersigned judge is not entering a final order on the Motion to

Withdraw Reference, but rather is only making a report and recommendation to the District Court to enter an order withdrawing the reference of the Adversary Proceeding.

### B. Legal Standard for Withdrawal of the Reference From the Bankruptcy Court

Under General Order 2012-6 of the United States District Court for the Southern District of Texas, "Bankruptcy cases and proceedings arising under Title 11 or arising in or related to a case under Title 11 of the United States Code are automatically referred to the bankruptcy judges of the district . . . ." *See also* 28 U.S.C. § 157(a). Bankruptcy Local Rule 5001-1 requires the Defendants to present any motions for withdrawal to the bankruptcy court, which then makes a recommendation to the District Court as to whether to grant or deny the motions.

The District Court has discretion to "withdraw, in whole or in part, any case or proceeding . . . for cause shown." 28 U.S.C. § 157(d). In *Holland America Insurance Company v. Roy*, 777 F.2d 992 (5th Cir. 1985), the Fifth Circuit held that in determining whether a movant has shown cause under 28 U.S.C. § 157(d) to withdraw the reference, a district court should consider the following issues: (1) whether the underlying lawsuit is a core or non-core proceeding; (2) whether promotion of uniformity in bankruptcy administration will be achieved; (3) whether forum shopping and confusion will be reduced; (4) whether there will be economical use of debtors' and creditors' resources; (5) whether the withdrawal of reference will expedite the bankruptcy process; and (6) whether a party has demanded a jury trial. *Id.* at 999; *see also Mirant Corp. v. Southern Co.*, 337 B.R. 107, 115 (N.D. Tex. 2006) (considering *Holland America* factors in determination of motion to withdraw reference).

### C. This Court Recommends that the District Court Withdraw the Reference of the Adversary Proceeding

A review of the six *Holland America* factors weighs, on balance, in favor of withdrawal of the reference by the District Court. For the reasons set forth below, this Court recommends that the District Court withdraw the reference of the Adversary Proceeding.

1. <u>Whether the Underlying Lawsuit is a Core or Non-Core Proceeding</u>

A proceeding is core "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987). The Plaintiffs bring seven causes of actions against the Defendants; six of these claims are founded solely in Texas state law, and the seventh claim is based upon non-bankruptcy federal law. Therefore, all of these claims constitute non-core claims.

First, case law is clear that negligence claims are non-core. *See, e.g., In re 610 W. 142 Owners*, 219 B.R. 363, 370–71, 372 (Bankr. S.D.N.Y. 1998) (holding that prepetition state law causes of action for negligence . . . that do not involve the application of bankruptcy law are non-core proceedings); *In re White*, 172 B.R. 841, 844 (S.D. Miss. 1994) (withdrawing reference to the district court and stating that "the claims at issue do not represent the type of core matters traditionally entrusted to the bankruptcy court . . . [r]ather, the trustee's claims for negligence . . . [is] of the type conventionally urged in the district court where they would have been brought in the absence of the bankruptcy petitions in this case. Thus, they are appropriately classified as 'non-core.' ") (internal citations omitted); *M&E Contractors, Inc. v. Kugler-Morris General Contractors, Inc.*, 67 B.R. 260, 269 (N.D. Tex. 1986) (stating that "the [] negligence claims are, of course based solely in state law" and concluding that withdrawal of reference in connection with the contract and negligence claims was proper) (emphasis added); *Manley Truck Line, Inc.*

*v. Mercantile Bank of Kansas City*, 106 B.R. 696, 697 n. 2 (D. Kan. 1989) ("[T]he court finds that Manley's present action, asserting state law claims for negligence . . . is in the nature of a non-core proceeding."). Here, the Plaintiffs assert that the Defendants "had a legal duty to service the Plaintiffs' mortgage with reasonable diligence . . . [and] [t]he Defendants breached this duty by providing the Plaintiffs with five different payoff statements alleging five different amounts owed on the mortgage and failing to reconcile the payoff statements." [Adv. Doc. No. 1, p. 4 of 9]. The Plaintiffs fail to cite or reference any particular right created by the Bankruptcy Code which would not exist independent of a bankruptcy environment, and therefore their claim for negligence is non-core.

Second, the Plaintiffs' claim for negligent misrepresentation is non-core. The Fifth Circuit has made it clear that negligent misrepresentation claims are generally within a bankruptcy court's non-core jurisdiction. *See In re Stonebridge Technologies, Inc.*, 430 F.3d 260, 267 (5th Cir. 2005) ("[C]laims between third parties, such as the negligent misrepresentation claims, are typically considered within the bankruptcy court's non-core jurisdiction."); *see also WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F.Supp.2d 596 (S.D. Tex. 1999). However, the Fifth Circuit has made an exception to the general rule when a negligent misrepresentation claim is dependent upon the interpretation of rights created in bankruptcy. *Stonebridge*, 430 F.3d at 267. Here, the Plaintiffs' claim for negligent misrepresentation is not dependent upon the interpretation of any rights created in bankruptcy. The Plaintiffs contend that "the Defendants provided at least four different payoff statements . . . that were false . . . [and that] [t]he Plaintiffs relied on the inaccurate payoff statements provided by HSBC by incurring the costs of moving and entering into a lease agreement for a new home." [Adv. Doc. No. 1, pp. 4–5 of 9]. Indeed, nowhere in the Complaint

do the Plaintiffs assert that their claim for negligent misrepresentation depends on the interpretation of any rights created in bankruptcy.

Third, the Plaintiffs' claim for breach of contract is non-core. The Plaintiffs assert that "the Defendants breached the note and deed of trust by failing to provide the Plaintiffs with a usable payoff statement . . . ." [Adv. Doc. No. 1, p. 5 of 9]. There is no question that claims for breach of contract arise under state law. *See, e.g., In re Legal Xtranet, Inc.*, 453 B.R. 699, (Bankr. W.D. Tex. 2011) (finding that [the plaintiff's] contract claims against AT&T are non-core because the claims do not arise under or arise in a case under title 11); *Coho Oil & Gas, Inc. v. Finley Res., Inc. (In re Coho Energy, Inc.)*, 309 B.R. 217, 222 (Bankr. N.D. Tex. 2004) (finding that "an action seeking damages for pre-petition breaches of pre-petition contracts . . . was a non-core proceeding which neither arises in nor under title 11"); *Manley*, 106 B.R. at 697 n. 2 ("[T]he court finds that Manley's present action, asserting state law claims for . . . breach of contract . . . is in the nature of a non-core proceeding."). Indeed, the Plaintiffs do not even argue that their breach of contract claim invokes a substantive right provided by the Bankruptcy Code. *See Wood*, 825 F.2d at 97 (noting that a proceeding does not "arise under" Title 11 if it does not invoke a substantive right, created by federal bankruptcy law, that could not exist outside of bankruptcy). As the Plaintiffs' claim for breach of contract could be brought outside the bankruptcy environment, this claim is non-core.

Fourth, the Plaintiffs' claim for interference with an existing contract is non-core. *See In re Yobe*, 75 B.R. 873 (Bankr. W.D. Pa. 1987) (claim of tortious interference alleged to have caused bankruptcy held to be non-core); *In re Bokum Resources Corp.*, 49 B.R. 854 (Bankr. D.N.M. 1985) (contract-related tortious interference claim held to be non-core). Similarly, the

Plaintiffs do not argue that their claim for interference with an existing contract invokes a substantive right provided by the Bankruptcy Code. *See Wood*, 825 F.2d at 97 (noting that a proceeding does not "arise under" Title 11 if it does not invoke a substantive right, created by federal bankruptcy law, that could not exist outside of bankruptcy). As the Plaintiffs' claim for interference with an existing contract could be brought outside the bankruptcy environment, this claim is non-core.

Fifth, the Plaintiffs' claim for damage to credit rating is non-core. This cause of action is a quintessential state law claim, *see St. Paul Surplus Lines Ins. Co., Inc. v. Dal-Worth Tank Co., Inc.*, 974 S.W.2d 51 (Tex. 1998); it has no connection to the Bankruptcy Code. Again, this claim does not invoke any substantive right created by the Bankruptcy Code, does not arise under the Bankruptcy Code, and is not one that could have arisen only in a bankruptcy case.

Sixth, the Plaintiffs' claim for violation of the Texas Debt Collection Act is non-core. *See Thompson v. Bank of America Nat. Ass'n*, 783 F.3d 1022, 1025 (5th Cir. 2015). There is no question that the claim brought under the Texas Debt Collection Act is a state law claim. As such, this claim does not invoke any substantive right created by the Bankruptcy Code.

Lastly, the Plaintiffs' claim for violation of the Truth in Lending Act pursuant to 15 U.S.C. §§ 1639(t) and 1639g is non-core. *See In re Peacock*, 101 B.R. 22, 23 (C.D. Ill. 1988). There is also no question that the claim brought under the Truth in Lending Act is a claim based upon non-bankruptcy federal law, and, as such, this claim does not invoke any substantive right created by the Bankruptcy Code. Stated differently, neither the claim brought under the Texas Debt Collection Act nor the claim brought under the Truth in Lending Act arises under the Bankruptcy Code, and neither could have arisen only in a bankruptcy case.

As detailed above, it is clear that the Adversary Proceeding primarily involves interpretation of state law, which are not affected by any bankruptcy issues; the causes of actions asserted by the Plaintiffs are non-core claims and no core-related claims are presented in the Complaint. Under these circumstances, this first factor weighs heavily in favor of withdrawal of the reference.

2. <u>Whether Promotion of Uniformity in Bankruptcy Administration will be Achieved</u>

"If a bankruptcy court is already familiar with the facts of the underlying action, then allowing that court to adjudicate the proceeding will promote uniformity in the bankruptcy administration." *In re British Am. Props. III, Ltd.*, 369 B.R. 322, 327 (Bankr. S.D. Tex. 2007); *see Palmer & Palmer, P.C. v. U.S. Trustee (In re Hargis)*, 146 B.R. 173, 176 (N.D. Tex. 1992); *Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.)*, 136 B.R. 59, 61 (S.D.N.Y. 1992). The Plaintiffs filed the Complaint that is the genesis of this Adversary Proceeding on December 11, 2015. [Adv. Doc. No. 1]. The undersigned judge has conducted only one status conference hearing in this dispute. Also, while the undersigned judge did sign and enter an order dismissing Caliber's First Motion to Dismiss, the undersigned judge did so based on Caliber's failure to comply with Bankruptcy Local Rule 9013-1(h). [Adv. Doc. No. 13]. Stated differently, the undersigned judge did not adjudicate on the substance of Caliber's First Motion to Dismiss. Moreover, the undersigned judge has not spent any time focusing on the merits of Caliber's Second Motion to Dismiss, as it seems inappropriate to do so until the District Court issues a ruling on the Motion to Withdraw Reference. Thus, the undersigned judge has simply not invested large amounts of time or resources in becoming familiar with the underlying merits and factual allegations asserted in the Adversary Proceeding.

Under these circumstances, having the District Court adjudicate the substantive issues will not impede uniformity in the bankruptcy administration. *See British Am.*, 369 B.R. at 327 ("Because this Court has not invested large amounts of its time and resources and has not made any other rulings in the Adversary Proceeding, this factor favors withdrawal of the reference."); *see also In re EbaseOne Corp.*, 01-31527-H4-7, 2006 WL 2405732, at *4 (Bankr. S.D. Tex. June 14, 2006) (concluding uniformity in bankruptcy administration was not adversely affected because the bankruptcy court had not yet focused on any procedural or substantive issues). This second factor favors withdrawal of the reference.

    3. <u>Whether Forum Shopping and Confusion will be Reduced</u>

The Plaintiffs initiated the Adversary Proceeding before this Court. While Caliber did file a proof of claim in the main bankruptcy case, HSBC and Household Finance have not participated in the main bankruptcy case and have never filed a proof of claim. Rather, HSBC and Household Finance became involved in this bankruptcy only when the Plaintiffs brought this Adversary Proceeding. There has been no indication whatsoever that HSBC and Household Finance are forum shopping. Indeed, all of the Plaintiffs' causes of actions asserted in the Complaint are non-core and do not invoke any substantive right created by bankruptcy. Accordingly, HSBC and Household Finance are not forum shopping by seeking a withdrawal of the reference. This factor therefore strongly favors withdrawal of the reference.

    4. <u>Whether There Will be Economical Use of the Plaintiffs' and Defendants' Resources</u>

Bankruptcy aims to maximize the efficient use of resources to administer the debtor's estate and resolve related litigation. *Plan Adm'r v. Lone Star RV Sales, Inc. (In re Conseco Fin. Corp.)*, 324 B.R. 50, 55 (N.D. Ill. 2005). At the hearing, counsel for HSBC and Household Finance argued that because this bankruptcy court is limited to making only recommendations to

11

the District Court on state law claims, it would be economical and efficient for the parties to avoid the "two-step process" of having the same claims and issues heard by the bankruptcy judge (who will make a recommendation to the District Court) and the district judge (who will render a final judgment on the merits). This Court agrees. Indeed, HSBC and Household Finance have expressly stated that they do not consent to the undersigned bankruptcy judge entering a final judgment in the Adversary Proceeding, so there is no question that if this Court holds a trial on the claims, then pursuant to 28 U.S.C. § 157(c)(1), it will necessarily have to submit proposed findings of fact and conclusions of law to the District Court—a "two-step process" which can increase the attorneys' fees and costs to the parties. Moreover, having the District Court immediately withdraw the reference of the Adversary Proceeding will not increase or repeat costs and expenses because no significant costs or expenses have been incurred to date. The parties have simply not spent substantial time and money on briefing and arguing the facts and law involved in the Adversary Proceeding. Finally, the Court notes that while Caliber has not moved to withdraw the reference, this Court nevertheless believes that the claims related to all three Defendants should be withdrawn to the District Court in order to promote judicial economy and efficiency; it makes no sense for the undersigned bankruptcy judge to adjudicate the Plaintiffs' claims against Caliber while the District Court adjudicates the same claims against HSBC and Household Finance. This fourth factor therefore heavily favors withdrawal of the reference.

     5. Whether the Withdrawal of Reference Will Expedite the Bankruptcy Process

"A district court should consider the importance of the proceeding to the bankruptcy case and refuse to withdraw the reference if the withdrawal would unduly delay the administration of the bankruptcy case." *British Am.*, 369 B.R. at 328 (citing *In re Pruitt*, 910 F.2d 1160, 1168 (3d

Cir. 1990)). Stated differently, when considering a motion to withdraw the reference, the district court should seek to promote efficiency and economy. *Holland Am.*, 777 F.2d at 999. Withdrawal of the reference of all of the Plaintiffs' claims expedites the bankruptcy process because it eliminates the prospect of: (1) contemporaneous proceedings in this Court and the District Court; and (2) the District Court having to conduct a *de novo* review of proposed findings and conclusions of the undersigned bankruptcy judge after a trial in the bankruptcy court on non-core claims. Thus, withdrawal of the reference will expedite the bankruptcy process because the District Court will hold one trial and issue one judgment. Therefore, the Debtor, who is one of the Plaintiffs, will spend fewer funds litigating this suit to its conclusion—a scenario which promotes one of the primary goals of the bankruptcy system, namely to pay claims as much as possible; stated otherwise, the fewer funds the Debtor pays to her attorney to try this lawsuit, the more funds she will have available to pay her creditors. Finally, as this Court has already noted above, although Caliber has not moved to withdraw the reference, **all** of the claims against the three Defendants should be withdrawn to the District Court in order to promote judicial economy and efficiency.

Withdrawal of the reference will also not unduly delay the Chapter 13 trustee's administration of the main Chapter 13 case. The Debtor filed her Chapter 13 petition on June 2, 2015, and filed a proposed plan on July 17, 2015. The plan proposes to pay $503,200.00 over a 44-month period to the Chapter 13 trustee for distribution to creditors. This Court has not yet confirmed the plan due to the pending litigation among the parties. However, on February 2, 2016, this Court issued an order authorizing the Chapter 13 trustee to make interim disbursements pending confirmation of the proposed plan—including payments on the Plaintiffs' home loan (which is presently held by Caliber). The Chapter 13 trustee's website reflects that

the Debtor has made all of her monthly payments to the Chapter 13 trustee—with a *de minimus* amount of $184.65 still owing for the month of April—and that the trustee has made disbursements to creditors during this 10-month period of $18,806.52, with $13,505.84 having been distributed to Caliber. These circumstances reflect that the Adversary Proceeding has so far not impaired the administration of the Debtor's Chapter 13 case in any respect, and there is no reason to believe that withdrawal of the Adversary Proceeding would undermine this administration in the future.

Under all of the circumstances set forth above, this fifth factor heavily favors withdrawal of the reference.

      6.   <u>Whether a Party has Demanded a Jury Trial</u>

"A party against whom legal action has been brought to recover monetary damages and who has never filed a claim against the estate is entitled to a jury trial under the constitutional mandates of the Seventh Amendment to the United States Constitution, notwithstanding Congress' characterization of the action as a core proceeding." *Nu Van Tech., Inc. v. Cottrell, Inc. (In re Nu Van Tech., Inc.)*, No. 01–49589–DML–11, 03–4219, 2003 WL 23785355, at *2 (N.D. Tex. Oct. 14, 2003). Therefore, when considering a motion to withdraw, the district court should consider whether any party has made a demand for a jury trial. *Holland Am.*, 777 F.2d at 999. While HSBC and Household Finance are entitled to a jury trial under *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 64 (1989), they have made no demand for a jury trial. Meanwhile, Caliber has not yet filed an answer because it awaits a ruling on its Second Motion to Dismiss; therefore, it is unclear whether Caliber will demand a jury trial. Even if Caliber does make a jury demand, because it has filed a proof of claim to which the Debtor has objected, it is questionable whether it would be entitled to a jury trial. *See In re Endeavour Highrise, L.P.*, 425 B.R. 402,

408 (Bankr. S.D. Tex. 2010) (construing three Supreme Court cases to hold that a creditor who has filed a proof of claim loses the right to a jury trial when the debtor objects to that claim).

Under all of these circumstances, the sixth factor weighs against withdrawal of the reference.

## IV. CONCLUSION

The undersigned bankruptcy judge believes that five of the six *Holland America* factors favor withdrawal of the reference, with only the "jury trial" factor working against withdrawal. While the demand for a jury trial is an important factor, the Court nevertheless finds that, taken together, the other five factors outweigh the importance of this one factor. Under these circumstances, the undersigned judge believes that cause exists under 28 U.S.C. § 157(d), and therefore recommends that the District Court withdraw the reference of the Adversary Proceeding.

Signed on this 26th day of April, 2016.

_____
Jeff Bohm
United States Bankruptcy Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re:<br><br>MARIA SOUTHALL-SHAW,<br>Debtor. | § § § § § § | Case No. 15-33085<br>Chapter 13 |
| MARIA SOUTHALL-SHAW AND ELVIS LEE SHAW,<br>Plaintiffs<br><br>v.<br><br>HSBC MORTGAGE SERVICES, INC. HOUSEHOLD FINANCE CORPORATION III AND CALIBER HOME LOANS, INC.,<br>Defendants. | § § § § § § § § § § § § § § | Adversary No. 15-03322 |

### ORDER WITHDRAWING REFERENCE OF ADVERSARY NO. 15-03322

Based on the Report and Recommendation of the Bankruptcy Court regarding the Motion for Withdrawal of the Reference filed by HSBC Mortgage Services, Inc. and Household Finance Corporation, III, the Court finds that the Motion for Withdrawal of the Reference should be granted. It is therefore:

ORDERED that the Motion for Withdrawal of the Reference is granted in its entirety; and it is further

ORDERED that the District Court shall try all of the claims brought in Adversary No. 15-03322.

Signed this _____ day of _____, 2016.

_____
UNITED STATES DISTRICT JUDGE

1